# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————————

No. 16-1572

———————————————

CHRISTOPHER D. WENGER and EILEEN MULLER,
on behalf of themselves and others similarly situated,

<u>Appellants</u>

v.

BOB'S DISCOUNT FURNITURE, LLC

<u>Appellee</u>

———————————————————————————————————

## BRIEF OF APPELLANTS
## AND APPENDIX VOLUME I (App.1 - App.18)

———————————————————————————————————

On Appeal from the February 29, 2016 Order
Granting Motion to Dismiss Entered by the United States District Court
for the District of New Jersey, Case No. 3:14-cv-07707 (PGS)

———————————————————————————————————

The Wolf Law Firm, LLC
Andrew R Wolf, Esq.
Henry P. Wolfe, Esq.
1520 U.S. Hwy 130, Ste. 101
North Brunswick, NJ  08902
Tel: (732) 545-7900
*Counsel for Appellants*

June 15, 2016

**TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................1

STATEMENT OF RELATED CASES AND PROCEEDINGS .............1

CONCISE STATEMENT OF THE CASE ..........................................2

  I.  Relevant Facts.................................................................2

  II.   Procedural History.............................................................3

SUMMARY OF THE ARGUMENT .................................................5

STANDARD OF REVIEW FOR ISSUES ON APPEAL.......................8

ARGUMENT ............................................................................9

  I.   THE DISTRICT COURT ERRED IN CONSTRUING THE NEW JERSEY
    TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT
    (TCCWNA) TO REQUIRE ACTUAL HARM TO SUSTAIN A CLAIM FOR A
    CIVIL PENALTY, SIMPLY BECAUSE THE STATUTE REFERS TO THE
    PARTY ENTITLED TO THE PENALTY AS "THE AGGRIEVED
    CONSUMER." ...................................................................9

    A.  Brief description of the TCCWNA.............................................. 9

    B.  The District Court's construction of "the aggrieved consumer"
       is at odds with the TCCWNA's other statutory language. ............ 10

    C.  The District Court's construction of "the aggrieved consumer"
       is at odds with the TCCWNA's legislative history. ...................... 13

    D.  The District Court's construction of "the aggrieved consumer"
       is contrary to prior authority. ............................................... 13

    E.  The District Court's construction of the TCCWNA was based
       on the faulty premise that "the aggrieved consumer" unambiguously
       means a consumer who suffers actual harm from a violation beyond
       the violation itself. ............................................................. 17

    F.  The District Court's construction of the TCCWNA is contrary to the
       New Jersey Supreme Court's instruction to construe the TCCWNA
       liberally......................................................................... 21

  II.   THE PLAINTIFFS HAVE OTHERWISE PROPERLY STATED A
    CLAIM UNDER THE TCCWNA UPON WHICH RELIEF CAN BE
    GRANTED. .....................................................................22

CONCLUSION .......................................................................26

COMBINED CERTIFICATIONS ..................................................27

APPENDIX ...........................................................................29

# TABLE OF AUTHORITIES

## Cases

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F.Supp.2d 347 (D.N.J. 2006) ....16

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918 (3d Cir. 2015) ............................ 6, 14

*Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942 (N.J. App.Div. 2007) 15, 16, 21, 22

*Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009) ..................................12

*Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141 (N.J. 2001) .................................26

*Kendall v. CubeSmart L.P.*, 2016 U.S. Dist. LEXIS 53668 (D.N.J. Apr. 21, 2016) ................................................................................................................17

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ......................................................8

*McGarvey v. Penske Auto. Group,* 639 F. Supp. 2d 450 (D.N.J. 2009).................16

*Oettinger v. Stevens Commer. Roofing*, LLC, 2013 N.J. Super. Unpub. LEXIS 1854, 2013 WL 3811765 (N.J. App.Div. July 24, 2013) ............................. 19, 21

*Shelton v. Restaurant.com, Inc.*, 70 A.3d 544 (N.J. 2013) ............................. passim

*Sroczynski v. Milek*, 961 A.2d 704 (N.J. 2008) .......................................................26

*Tribuzio v. Roder*, 813 A.2d 1210 (N.J. App.Div. 2003) ................................... 8, 21

*United Consumer Financial Services Co. v. Carbo*, 982 A.2d 7 (N.J. App.Div. 2009)................................................................................................................16

*United States v. Brown*, 740 F.3d 145 (3d Cir. 2014) ...............................................9

*United States v. Simonelli*, 614 F. Supp. 2d 241, 244 (D. Conn. 2008) .................11

*Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. N.J. Nov. 7, 2014) . 6, 15, 22

## Statutes and Court Rules

28 U.S.C. §1291 ..........................................................................................................1

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) .............................................1

Fed. R. Civ. P. 12(b)(6)...........................................................................................4, 8

New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1, *et seq.* .................. 12, 14

New Jersey Junk Fax Act, N.J.S.A. 56:8-159, *et seq.* ...................................... passim

New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A 56:8-14, *et seq.* ................................................................................. passim

New Jersey Uniform Commercial Code, at N.J.S.A. 12A:1-201 ....................... 7, 18

New Jersey Wiretapping Act, at N.J.S.A. 2A:156-1, *et seq.* ...................................18

New Jersey's Furniture Delivery Regulations, N.J.A.C. 13:45A-5.1 *et seq.*.... passim

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), since the amount in controversy exceeds $5,000,000 exclusive of interest and costs and there is at least minimal diversity between Plaintiffs and the class on the one hand and Defendant on the other hand.  This Court has jurisdiction under 28 U.S.C. §1291 since this is an appeal from a final judgment of the District Court that disposes of all parties' claims.

This appeal is timely.  The District Court's Order granting Defendant's motion to dismiss this case and closing the case was entered on February 29, 2016.  Plaintiffs timely filed their notice of appeal to this Court on March 10, 2016.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in construing the New Jersey Truth in Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A 56:8-14, *et seq.*, to require actual harm or "suffering" as an element to a private action for the statutory penalty, simply because the statute references the party entitled to the penalty as "the aggrieved consumer."

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The District Court heard argument and issued its opinion in this action along with a companion case, *Spade, et al. v. Select Comfort Corp., et al.*, District Court

1

Case No. 3:15-cv-01826 (PGS).   The District Court entered an order dismissing

that case, and an appeal of that order is pending before this Court. *Spade, et al. v.*

*Select Comfort Corp.,* Third Circuit Case No. 16-1558.

## CONCISE STATEMENT OF THE CASE

### I.      Relevant Facts

This is a putative consumer class action alleging that the Defendant-

Appellee, a furniture retailer, violated the New Jersey Truth in Consumer Contract,

Warranty and Notice Act (TCCWNA), at N.J.S.A. 56:12-15, which prohibits

sellers from giving consumers contracts or notices that contain provisions that

violate the consumer's rights or the seller's responsibilities under any other New

Jersey or federal law, and provides a private right of action for a civil penalty of

not less than $100. Specifically, Plaintiffs-Appellants allege that Defendant

violated the TCCWNA by giving them and other furniture buyers standardized

sales forms with provisions that violate Defendant's responsibilities under the New

Jersey's Furniture Delivery Regulations, N.J.A.C. 13:45A-5.1 *et seq.*

The Furniture Delivery Regulations, the only New Jersey consumer

protection regulations directly applicable to Defendant's industry, requires

furniture retailers to offer full refunds in the event of late or non-conforming

deliveries.  N.J.A.C. 13:45A-5.1(a), (b), and (e).  The Regulations also require that

certain notices be given to the buyer in at least 10-point, bold type, using specific

language set forth in the Regulations, including a notice of the promised delivery date, N.J.A.C. 13:45A-5.2, and a notice of the buyer's right to a full refund in the event of late or nonconforming delivery, N.J.A.C. 13:45A-5.3.

Plaintiffs allege that Defendant's sales forms include several provisions that violate the Defendant's responsibilities and its customers' rights under the Furniture Delivery Regulations, giving rise to TCCWNA violations. These include provisions that impermissibly limit or condition the customer's right to a full refund under N.J.A.C. 13:45A-5.1, a notice of the promised delivery date given in non-bold, smaller than 10-point font and in a format different from that required by N.J.A.C. 13:45A-5.2, and a notice of the right to refund given in non-bold, less than 10-point font, in violation of N.J.A.C. 13:45A-5.3. Amended Complaint, ¶¶20-30, 57.

## II.    Relevant Procedural History

On October 31, 2014, Plaintiffs filed a class action complaint against Defendant with the Superior Court of New Jersey, bringing claims for statutory damages under the TCCWNA, N.J.S.A. 56:12-14, *et seq.*, predicated on violations of the Furniture Delivery Regulations, N.J.A.C. 13:45A-5.1, *et seq.* On December 10, 2014, Defendant filed a notice of removal to the United States District Court of New Jersey alleging diversity jurisdiction under the Class Action Fairness Act.

3

Plaintiffs' filed a motion for remand, and after jurisdictional discovery, the district court eventually denied the motion.

On February 17, 2015, Defendant filed a motion to dismiss the amended complaint under Rule 12(b)(6), arguing, *inter alia*, that Defendant substantially complied with the Furniture Delivery Regulations and the Plaintiffs did not allege ascertainable loss, and so the violations of the Regulations did not give rise to TCCWNA liability. Plaintiffs opposed the motion, arguing that Defendant's sales forms clearly violated the Regulations, which are subject to TCCWNA, and that TCCWNA does not require a showing of ascertainable loss to sustain a claim for a civil penalty.

After initial oral argument on the motion to dismiss, the District Court issued a *sua sponte* order on December 8, 2015 directing the parties to file supplemental briefs on two issues not previously raised by the parties: whether there was a "case or controversy" sufficient for Article III standing absent allegations of actual injury, and whether there was an "aggrieved party" under the TCCWNA. After the supplemental briefs were submitted, oral argument was heard on January 20, 2016 in conjunction with oral argument in another case before the district court involving similar TCCWNA claims, *Spade v. Select Comfort Group* (currently before this Court under Case No. 16-1558).  On February 29, 2016, the District

4

Court entered an order and placed its opinion on the record granting Defendant's

motion to dismiss, which Plaintiffs now appeal.

## SUMMARY OF THE ARGUMENT

In dismissing Plaintiffs' claims for civil penalties under the TCCWNA based

on their failure to allege actual harm, the District Court misconstrued the

TCCWNA's remedial section, which provides in relevant part as follows:

> Any person who violates the provisions of this act shall be liable to
> the aggrieved consumer for a civil penalty of not less than $100.00 or
> for actual damages, or both at the election of the consumer, together
> with reasonable attorney's fees and court costs. This may be
> recoverable by the consumer in a civil action in a court of competent
> jurisdiction or as part of a counterclaim by the consumer against the
> seller, lessor, creditor, lender or bailee or assignee of any of the
> aforesaid, who aggrieved him.

N.J.S.A. 56:12- 17.  Focusing exclusively on the term "the aggrieved consumer,"

the District Court held that in order to sustain a claim for a civil penalty, the

Plaintiffs were required allege not only that the Defendant violated the TCCWNA

by giving them notices with provisions contrary to New Jersey law, but also that

Plaintiffs are actually "suffering the effects of a violation."  App. 18, February 19,

2016 Oral Opinion, Tr. 16:7- 16:8.

This construction is contrary to the TCCWNA's language, its legislative

history, and to numerous prior judicial decisions confirming that actual harm is not

necessary to sustain civil penalty claims, including decisions of this Court. See

5

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015)("We cannot disregard the [New Jersey] legislature's choice to award statutory damages in the absence of actual damages [under the TCCWNA]."); *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. N.J. Nov. 7, 2014)("TCCWNA creates liability whenever a seller presents a consumer with a covered writing that 'contains terms contrary to any established state of federal right of the consumer.'") (citation omitted).

These decisions are consonant with the text of N.J.S.A. 56:12-17, which uses the disjunctive "or" when imposing liability "for a civil penalty of not less than $100 <u>or</u> for actual damages…", thus contemplating that violators will be liable for a civil penalty even in the absence of actual damages. In fact, the drafters of the language at issue, the New Jersey Assembly Committee members who amended N.J.S.A. 56:12-17 to its current form, confirmed that no actual harm is necessary to pursue the civil penalty in a formal statement issued with the amendment:

> [N.J.S.A. 56:12-17], as amended by the committee, provides that a business which violates the provisions of this bill would be liable to the aggrieved consumer for a civil penalty of not less than $100.00 ***if the consumer was not injured by such a violation*** and for a civil penalty and actual damages if he was injured by such a violation.

App. 45. This clear statement of legislative intent is consistent with the drafter's use of the word "penalty" rather than "statutory damages," which focuses on the violator's conduct rather than the effect of the violation on the consumer.  It is also

consistent with the drafter's use of the "the" in the term "the aggrieved consumer" which implies that such a consumer exists whenever a violation occurs.

According to the District Court, it was free to disregard this prior case law and legislative history because the term "'aggrieved consumer'… is not ambiguous, and therefore the language of the statute should apply."  App. 18, Tr. 16:7 – 16:10. However, "the aggrieved consumer" does *not* unambiguously mean a consumer who suffers harm or any grievance *other than* the invasion of the consumer's right under the TCCWNA to not be subjected to consumer notices with provisions contrary to New Jersey or federal law.  In fact, terms like "aggrieved party" or "aggrieved person" have been used in other New Jersey statutes as a shorthand term to refer simply to a person entitled to a remedy under a statute. See e.g., New Jersey Junk Fax Act, N.J.S.A. 56:8-159, *et seq.* (providing a right of action to "any person aggrieved by a violation of this act", with statutory damages of not less than $500 regardless of actual harm); New Jersey Uniform Commercial Code, at N.J.S.A. 12A:1-201 (defining "aggrieved party" simply as "a party entitled to resort to a remedy.")

This use of "aggrieved party" is even supported by the Black's Law dictionary definition relied upon by the District Court (App. 16 – 17, Tr. 14:23 – 15:1), which *primarily* defines "aggrieved party" as simply "[a] party entitled to a remedy," and only secondarily notes, *after a semi-colon*, that the term is especially

7

applicable where the parties' pecuniary interests were adversely effected.  *Black's Law Dictionary* (9th Ed., 2009).  Of course, "especially" does not mean "exclusively," and this definition further refutes the District Court's conclusion that "it is not ambiguous" that "the aggrieved consumer" means "one who is suffering the effects of a violation."  App. 18, Tr. 16:7 – 16:10.

Finally, the District Court's narrow interpretation of the TCCNWA is contrary to the New Jersey Supreme Court's edict that the TCCWNA is a remedial statute, entitled to a broad interpretation to facilitate its stated purpose."  *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 558 (N.J. 2013).  Thus, to the extent that there is any ambiguity to the term "the aggrieved consumer" it must be resolved in favor of a reading that expands rather than contracts coverage of the TCCWNA. *Tribuzio v. Roder*, 813 A.2d 1210, 1214 (N.J. App.Div. 2003)("Remedial statutes should be construed liberally, giving their terms the most extensive meaning of which they are reasonably susceptible.")

## <u>STANDARD OF REVIEW FOR ISSUES ON APPEAL</u>

The standard of review in this appeal is *de novo* for at least two reasons. First, *de novo* review is appropriate in reviewing dismissals under Rule 12(b)(6). *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)("We exercise *de novo* review of a District Court's dismissal under Rule 12(b)(6) for a failure to state a claim upon which relief may be granted.")  Second, where, as here "the District Court's

8

decision turns on statutory construction, [the Court of Appeals will] review the

matter *de novo*." United States v. Brown, 740 F.3d 145, 149 (3d Cir. 2014).

## **ARGUMENT**

I.      **THE DISTRICT COURT ERRED IN CONSTRUING THE NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT (TCCWNA) TO REQUIRE ACTUAL HARM TO SUSTAIN A CLAIM FOR A CIVIL PENALTY, SIMPLY BECAUSE THE STATUTE REFERS TO THE PARTY ENTITLED TO THE PENALTY AS "THE AGGRIEVED CONSUMER."**

### A. Brief description of the TCCWNA.

TCCWNA is a remedial statute aimed at deterring businesses from using

consumer contracts and notices containing provisions that violate or are contrary to

any other New Jersey or federal law.  *Shelton v. Restaurant.com, Inc.*, 70 A.3d

544, 549-550 (N.J. 2013). It provides that,

> No seller… shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller…as established by State or Federal law… Consumer means any individual who buys… any money, property or service which is primarily for personal, family or household purposes.

N.J.S.A. 56:12-15.  Thus, a business violates the TCCWNA when it gives a

contract or notice to a consumer that contains a provision contrary to other New

Jersey or federal law.

9

As its sole means of enforcement, the TCCWNA provides for a private right of action as follows:

> Any person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs. This may be recoverable by the consumer in a civil action in a court of competent jurisdiction or as part of a counterclaim by the consumer against the seller, lessor, creditor, lender or bailee or assignee of any of the aforesaid, who aggrieved him. A consumer also shall have the right to petition the court to terminate a contract which violates the provisions of section 2 of this act and the court in its discretion may void the contract.

N.J.S.A. 56:12-17.

## B. The District Court's construction of "the aggrieved consumer" is at odds with the TCCWNA's other statutory language.

The District Court's definition of "the aggrieved consumer" as someone who suffered actual harm from a violation cannot be harmonized with the TCCWNA's other statutory language.  Most notably, N.J.S.A. 56:12-17 creates a right of action "for a civil penalty of not less than $100.00 *or* for actual damages, or both *at the election of the consumer*…" [emphasis added].  By using the disjunctive "or," the Legislature clearly signaled that the civil penalty is available whether or not the consumer suffered any actual damages from the violation.

This construction is further supported by the Legislature's use of the term "civil penalty" instead of the more typical "statutory damages."

> A penalty is "[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine; esp[ecially], a sum of money exacted as a punishment for either a wrong to the state or a civil wrong (**as distinguished from compensation for the injured party's loss**)."

*United States v. Simonelli*, 614 F. Supp. 2d 241, 244 (D. Conn. 2008) (citing Black's Law Dictionary (8th ed. 2004)(emphasis added). By using the term "penalty," the Legislature clearly signaled that the remedy is to punish the violator so as to deter future violations, and not to provide compensation for actual injury to the consumer.

It is important to note that the Legislature's choice of "penalty" instead of "damages" was deliberate, and in fact was the result of an amendment changing the language from "damages" in the original bill to "penalty" in the final version. *Shelton*, *supra*, 70 A.3d 552 (Noting that the Assembly Commerce Committee "amended Assembly Bill No. 1660 to change one of the remedies from civil "damages" of not less than $100 to a civil "penalty" of not less than $100") (citing Assemb. B. 1660, 199th Leg., 1st Sess. (N.J.) (as reported by Assemb. Commerce, Indus. & Professions Comm., June 9, 1980)). See also App. 46.

Finally, the use of the word "the" to qualify "aggrieved consumer" in the text at N.J.S.A 56:12-17, under which "[a]ny person who violates the provisions of this act shall be liable to the aggrieved consumer for a civil penalty" implies that the Legislature contemplated that *every* violation of the TCCWNA (every time a

business offers or gives a contact or notice to a consumer) necessarily creates an "aggrieved consumer" (the consumer to whom the contract or notice was offered). Had the Legislature intended "aggrieved consumer" to mean only an injured consumer (or anything else beyond being a person against whom the TCCWNA was violated) it would have stated that a violator "shall be liable to an aggrieved consumer" or "any aggrieved consumer" (as it used in the same sentence to refer to violators) rather than "the aggrieved consumer."

Moreover, had the Legislature intended to impose an actual harm requirement for civil penalty claims, it would have expressly done so, rather than obliquely creating an important element to a private action through use of the undefined term "the aggrieved consumer."   The New Jersey Supreme Court has rejected similar attempts to add standing requirements to consumers' claims that are not expressly set forth in the statute, in the context of the Consumer Fraud Act (CFA).   *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 750-751 (N.J. 2009)(Rejecting defendant's argument that the CFA's "ascertainable loss" requirement implies a requirement for a pre-suit demand for redress because "we see in defendant's arguments an effort to import into the CFA obstacles that would impede access to the broad remedial protections for consumers that our Legislature so obviously intended to create.")  The same principal should be applied to reject the District Court's creation of an implied actual harm element for private actions

under the TCCWNA, as the CFA and the TCCWNA are closely related statutes.
See *Shelton*, *supra*, 70 A.3d at 552, 558 (noting that "the Governor's signing
message identified the TCCWNA as a measure to strengthen the CFA.").

### C. The District Court's construction of "the aggrieved consumer" is at odds with the TCCWNA's legislative history.

The District Court's construction of the TCCWNA requiring that a
consumer must "suffer" harm beyond the violation itself to be "the aggrieved
consumer" entitled to civil penalties under N.J.S.A. 56:12-17 is refuted by the
Legislative history of the TCCWNA.  On June 8, 1980, the Assembly Commerce,
Industry, and Professions Committee amended the pending bill to TCCWNA's
current form, and issued a Statement that read, in relevant part that:

> Section 4 [N.J.S.A. 56:12-17], as amended by the committee, provides that a
> business which violates the provisions of this bill would be liable to the
> aggrieved consumer for a civil penalty of not less than $100.00 ***if the
> consumer was not injured by such a violation*** and for a civil penalty and
> actual damages if he was injured by such a violation.

App. 45. Thus, the drafters of the very language at issue have confirmed that the
District Court was incorrect in construing "the aggrieved consumer" to mean a
consumer who was actually harmed by a violation.

### D. The District Court's construction of "the aggrieved consumer" is contrary to prior authority.

This Court has at least twice confirmed that the TCCWNA imposes liability
whenever a business violates the Act, without regard to any harm or "adverse

13

effects" caused by the violation.  In *Bohus v. Restaurant.com, Inc.*, 784 F.3d 918

(3d Cir. 2015), this Court reversed the District Court's ruling dismissing the

plaintiffs' claims for civil penalties under the TCCWNA because they were not

harmed by violation and so any recovery would be "windfall" damages, explaining

that

> the [District] Court's emphasis on what it deemed the "windfall"
> nature of the Plaintiffs' recovery was misplaced.  As explained in
> [*Shelton v. Restaraunt.com, supra*], "the TCCWNA is a remedial
> statute, entitled to a broad interpretation to facilitate its stated
> purpose," [*Shelton, supra*] 70 A.3d at 558, and the New Jersey
> legislature decided to impose a civil penalty as a "deterrent," *id.*, to
> effectuate that purpose — "to prevent deceptive practices in consumer
> contracts by prohibiting the use of illegal terms or warranties in
> consumer contracts," *id.* at 549 (quoting *Kent Motor Cars, Inc. v.
> Reynolds & Reynolds Co.*, 207 N.J. 428, 25 A.3d 1027, 1044 (N.J.
> 2011)). **We cannot disregard the legislature's choice to award
> statutory damages in the absence of actual damages.**

*Bohus v. Restaurant.com, Inc.*, 784 F.3d 918, 930 (3d Cir. 2015)(emphasis added).

The Court reversed and held that the plaintiffs sustained a cause of action for civil

penalties under the TCCWNA based on expiration provisions in the defendant's

gift certificates that were prohibited by the New Jersey Gift Certificate Act (a

subsection of the CFA), even though the plaintiffs suffered no harm from the

violation because they successfully redeemed the certificates.  Thus, the Plaintiffs'

failure in this case to allege that their furniture was delivered late or in non-

confirming condition is immaterial to their TCCWNA claims based on the violations of the Furniture Delivery Regulations in Defendant's sales forms.

Similarly, in *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. N.J. Nov. 7, 2014), this Court held that the "TCCWNA creates liability whenever a seller presents a consumer with a covered writing that "contains terms contrary to any established state of federal right of the consumer." *Id.*, at 134 (citing *Shelton*, *supra,* 70 A.3d at 558). This Court then enumerated the elements of a claim under the TCCWNA, which notably did not include actual harm, "adverse effect," or any sort of "aggrievement" other than the violation of the TCCWNA itself:

> To state a claim under TCCWNA, a plaintiff must allege each of four elements: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer a contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller.

*Watkins*, *supra* 591 Fed. Appx. at 135 (citing *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 949 (N.J. App.Div. 2007)).  Again, the District Court's construction of the TCCWNA adds a fifth element of actual harm, without support in the statutory text, and contrary to prior rulings of this Court.

Other courts have similarly confirmed that the TCCWNA creates a right of action for any consumer who is given an offending contract or notice, without regard to actual harm or aggrievement beyond the violation itself.  In *McGarvey v.*

*Penske Auto. Group,* 639 F. Supp. 2d 450, 457 (D.N.J. 2009)(reversed on other

grounds at 486 Fed. Appx. 276, 279 (3d Cir. N.J. 2012)), Chief Judge Simandle,

while dismissing the plaintiff's claims under the Magnuson Moss Warranty Act

(MMWA) because of a lack of actual harm as required to an action under that

statute (*Id.* at 457), upheld the plaintiffs' claims under TCCWNA based on the

same MMWA violations, explaining that

> ...as a court in this District recently explained, "the NJTCC[WN]A
> can be violated if a contract or [warranty] simply contains a provision
> prohibited by state or federal law, and it provides a remedy even if a
> plaintiff has not suffered any actual damages." *Barrows v. Chase
> Manhattan Mortg. Corp.*, 465 F.Supp.2d 347, 362 (D.N.J. 2006). If
> the Limited Warranty "contains a provision prohibited by [the
> MMWA]," id., therefore, Defendants may be held liable under the
> NJTCC[WN]A, even if Plaintiffs have not incurred actual damages.

*McGarvey*, supra, 639 F. Supp. 2d at 458. Similarly, in *United Consumer

Financial Services Co. v. Carbo*, 982 A.2d 7 (N.J. App.Div. 2009), the court

sustained TCCWNA claims based on contract provisions that imposed returned

check fees prohibited by the New Jersey Retail Installment Sales Act, even though

neither the plaintiff nor any other class members were ever charged the prohibited

fees. *Carbo*, *supra*, 982 A.2d at 22. See also *Bosland v. Warnock Dodge, Inc*.,

933 A.2d 942, 949 (N.J. App.Div. 2007)("TCCWNA establishes liability whenever

a seller offers a consumer a contract, the provisions of which violate any legal right

of a consumer."); *Kendall v. CubeSmart L.P.*, 2016 U.S. Dist. LEXIS 53668, *11

(D.N.J. Apr. 21, 2016)(same).

**E. The District Court's construction of the TCCWNA was based on the faulty premise that "the aggrieved consumer" unambiguously means a consumer who suffers actual harm from a violation beyond the violation itself.**

In its oral opinion, the District Court acknowledged the legislative history

and case law contrary to its construction of the TCCWNA, but declined to consider

them because "'aggrieved consumer'… is not ambiguous, and therefore the

language of the statute should apply." App. 18, Tr. 16:7 – 16:10. However,

"aggrieved consumer" does not *unambiguously* mean a consumer who was

"actually harmed," as demonstrated by the Black's Law Dictionary definition of

aggrieved relied upon by the District Court at (App. 16 – 17, Tr. 14:23 – 15:1):

> *aggrieved party*. (17c) A party entitled to a remedy; esp., a party
> whose personal, pecuniary, or property rights have been adversely
> affected by another person's actions or by a court's decree or
> judgment.

*Black's Law Dictionary* (9th Ed., 2009)[1].  This actually *supports* a construction of

"the aggrieved consumer" that does not require any actual harm or injury beyond

the violation itself, as the primary definition given before the semi-colon is simply

"[a] party entitled to a remedy."    In any event, this definition does not, as the

District Court claimed, render "the aggrieved consumer" to be "not ambiguous" to

---

[1] The transcript of the oral opinion omits the semi-colon between "remedy" and "esp.," apparently because the District Court did not annunciate the punctuation.

the extent that would justify disregarding prior case law and a formal Legislative statement clarifying that the TCCWNA imposes liability whenever a business violates the statute.

The District Court's conclusion that "aggrieved" unambiguously and necessarily means "actually harmed" also fails to account for other New Jersey statutes using "aggrieved person" or "aggrieved party" as a shorthand term for a person entitled to a remedy under the statute without regard to harm.   See e.g., the New Jersey Junk Fax Act, N.J.S.A. 56:8-159 (providing a right of action to "any person aggrieved by a violation of this act", with statutory damages of not less than $500 regardless of actual harm); the New Jersey Wiretapping Act, at N.J.S.A. 2A:156-2 and 32 (defining "aggrieved person" as "a person who was a party to any intercepted… communication or a person against whom the interception was directed, and providing a right of action to such persons for minimum statutory damages even in the absence of actual damages); and the New Jersey Uniform Commercial Code, N.J.S.A. 12A:1-201 (defining "aggrieved party" simply as "a party entitled to resort to a remedy.")

In a very instructive opinion, the New Jersey Appellate Division confirmed that "person aggrieved", as used in the New Jersey Junk Fax Act (NJJFA), does not imply that actual harm is required to sue for statutory damages under the statute, and "that a claimant is presumptively 'aggrieved' when he or she is the

recipient of a fax sent in violation of the NJJFA." *Oettinger v. Stevens Commer. Roofing*, LLC, 2013 N.J. Super. Unpub. LEXIS 1854, 2013 WL 3811765 (N.J. App.Div. July 24, 2013). In *Oettinger*, the defendant was charged with violating the NJJFA, which prohibits businesses from sending unsolicited faxes to a "person", and provides a private right of action to as follows:

> § 56:8-159. Action by aggrieved person
>
> a. Any person aggrieved by a violation of this act may bring an action in the Superior Court in the county where the transmission was sent or was received, or in which the plaintiff resides, for damages or to enjoin further violations of this act.
>
> b. The court shall proceed in a summary manner and shall, in the event the plaintiff establishes a violation of this act, enter a judgment for the actual damages sustained, or $500 for each violation, whichever amount is greater, together with costs of suit and reasonable attorney's fees.

The trial court in *Oettinger* dismissed the plaintiff's claim, "ruling that plaintiff failed to prove he was not sufficiently 'aggrieved' to obtain damages" under the NJJFA. *Oettinger*, 2013 N.J. Super. Unpub. LEXIS 1854, at *5. The Appellate Division reversed, holding that "aggrieved' means nothing more than having received an unsolicited fax in violation of the statute:

> Turning to the cognate provisions in the NJJFA, we note that the term "aggrieved" is not defined in the statute. Therefore, we seek to construe that statutory term by considering the plain meaning of the language and the intent of the Legislature. See *Levin v. Parsippany-Troy Hills*, [411 A.2d 704] (1980).

As evidenced by the various definitions of "aggrieved" cited by the trial court and plaintiff, we conclude that, in the absence of legislative history and if one were to ignore the related federal statute, the word could potentially be used to mean either: (1) that a claimant is required to make a showing of actual harm to demonstrate that they have been "aggrieved," or (2) that a claimant is presumptively "aggrieved" when he or she is the recipient of a fax sent in violation of the NJJFA. That said, the legislative history, structure, and purposes of the NJJFA all lead us to conclude that the Legislature did not intend to inject an additional requirement of tangible harm for claimants seeking relief under the Act.

[This is] consistent with the structure and purposes of the NJJFA. By offering claimants the greater of $500 or, alternatively, the actual damages suffered, the Legislature was clearly motivated by an objective to create a deterrent for those who would send unsolicited faxes, not just a desire to make victims of the practice whole.

Given that the Legislature intended to create such a baseline deterrent, irrespective of the actual damages suffered by the recipient, we see no basis for distinguishing between who is entitled to exercise the private right of action, so long as a plaintiff is the recipient of a fax sent in violation of the statute. "Generally, courts presume that 'or' is used in a statute disjunctively unless there is clear legislative intent to the contrary." *Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction* § 21:14 (7th ed. 2009). Hence, the use of the disjunctive term "or" within the statutory text comports with an interpretation that a plaintiff under the statute shall receive $500 per fax, or, in the alternative, a higher sum in actual damages if they are provable. See *Cox v. Sears Roebuck & Co.*, [647 A.2d 454] (N.J. 1994) (interpreting the Legislature's use of the word "or" in the Consumer Fraud Act, N.J.S.A. 56:8-2, as evidence that the Legislature intended for the statute's requirement of "any unconscionable commercial practice, deception, fraud, . . . or the knowing concealment, suppression, or omission of any material fact" to be a disjunctive condition).

*Id.,* at *5-10.

The reasoning in *Oettinger* - that a claimant is "aggrieved" simply by virtue of receiving a prohibited document - is equally applicable to the TCCWNA, as the two statutes are remarkably similar.  Both statutes providie that a violation arises from a business's simple act of sending or giving a violative document, and both providing a private action for the greater of a specified statutory award or actual damages for those "aggrieved."  Both statutes also share the same purpose of creating a deterrent to the dissemination of the proscribed documents.  As with the NJJFA, a consumers are presumed to be "aggrieved" under the TCCWNA when they are given contracts or notices that violate New Jersey or federal law.

## F.  The District Court's construction of the TCCWNA is contrary to the New Jersey Supreme Court's instruction to construe the TCCWNA liberally.

As noted earlier, the New Jersey Supreme Court has held that "the TCCWNA is a remedial statute, entitled to a broad interpretation to facilitate its stated purpose," [*Shelton, supra*] 70 A.3d at 55 8.  Under New Jersey law, "Remedial statutes should be construed liberally, giving their terms the most extensive meaning of which they are reasonably susceptible." *Tribuzio v. Roder*, 813 A.2d 1210, 1214 (App.Div. 2003).  An interpretation of a remedial statute "which narrows the scope of the Act and reduces the universe of persons entitled to relief, is disfavored. *Bosland v. Warnock Dodge, Inc.*, 933 A.2d 942, 948 (App.Div. 2007). Here, a reading of "the aggrieved consumer" to require an

additional showing of an "adverse effect" to collect a civil penalty under the

TCCWNA is a disfavored, strict reading, narrowing the persons entitled to relief,

contrary to TCCWNA's purpose of deterring businesses from using contracts and

notices in consumer transactions that violate other laws. Given the existence of a

reasonable and less restrictive alternative reading, *Shelton* requires rejection of the

District Court's narrow construction.

## II.    THE PLAINTIFFS HAVE OTHERWISE PROPERLY STATED A CLAIM UNDER THE TCCWNA UPON WHICH RELIEF CAN BE GRANTED.

As noted earlier, this Court has clarified that there are four elements to

claim for a civil penalty under the TCCWNA:

> To state a claim under TCCWNA, a plaintiff must allege each of
> four elements: (1) the plaintiff is a consumer; (2) the defendant is
> a seller; (3) the "seller offers a consumer a contract" or gives or
> displays any written notice, or sign; and (4) the contract, notice or
> sign includes a provision that "violate[s] any legal right of a
> consumer" or responsibility of a seller.

*Watkins*, *supra* 591 Fed. Appx. at 135 (citing *Bosland supra.*, 933 A.2d at 949).

Here, the first three elements have been properly alleged.  As to the first element,

the TCCWNA, at N.J.S.A. 56:12-15, defines "consumer" as "any individual who

buys… any… property… which is primarily for personal, family or household

purposes," and the Amended Complaint alleges that the Plaintiffs bought

household furniture from Defendant (App. 28, Am. Compl., ¶ 11, 12).  As to the

second element, the Amended Complaint alleges Defendant sells household furniture throughout New Jersey (*Id,* ¶ 9).  As to the fourth element, a written consumer "notice" subject to the TCCWNA has been broadly construed as "[a] written or printed announcement" *Shelton*, *supra,* 70 A.3d at 558 (citing Black's Law Dictionary (9th ed. 2009).  The documents at issue are incorporated into the Amended Complaint as Exhibits A, C, and D, it is apparent from reviewing them that they are "written or printed announcement[s] and therefore "notices," and the Amended Complaint alleges at ¶¶ 11 - 14 that Defendant gave them to Plaintiffs during the sale.  Plaintiffs have also properly alleged the fourth element of a TCCWNA claim described in *Watkins* by identifying several provisions in Defendants' sales documents that violate the Defendant's responsibilities under the Furniture Delivery Regulations.  See App. 29, Am. Compl., ¶¶ 19 – 29; 57(a) – (f).

At the outset, it should be noted that the Furniture Delivery Regulations are the only regulation specifically applicable the furniture retail industry imposed by the New Jersey Division of Consumer Affairs.  The Regulations are clearly written and are not at all onerous, imposing four modest responsibilities on furniture retailers when they make sales for future delivery:

1. The responsibility to deliver furniture by the date promised at the time of sale, in conforming condition, or else offer the customer the option

to cancel the sale "with a prompt, full refund of any payments already made." N.J.A.C. 13:45A-5.1;

2. The responsibility to copy the following sentence from the Regulation into customers' sales forms "in ten-point bold face type": "**The merchandise you have ordered is promised for delivery to you on or before** (insert date or length of time agreed upon)" and to ensure that "[t]he blank for the delivery date...shall be filled in by the seller at the time the contract of sale is entered into or when the sales documents are issued" N.J.A.C. 13:45A-5.2 (emphasis in original);

3. The responsibility to copy another sentence regarding seller's obligation to offer the option to cancel for a full refund for untimely or non-conforming delivery, specifically in "in 10-point bold face type." N.J.A.C. 13:45A-5.3(a);

4. The responsibility to refrain from including language in contracts or sales forms "such as 'all sales final,' 'no cancellations' or 'no refunds,' which violate or are contrary to the rights and responsibilities provided for by this rule." N.J.A.C. 13:45A-5.3(c).

Despite the simplicity of these requirements and the apparent lack of substantial cost to comply with them, Defendant managed to include provisions in its sales forms that violated its responsibilities under each

24

provision.  As alleged in the Amended Complaint, the Defendant's sales

forms include a provision notifying the consumer of the promised delivery

date in less than 10-point, non-bold font, and with a blank where the date is

required to be filled in, in violation of Defendants' responsibilities under

N.J.A.C. 13:45A-5.2. App. 33, Am. Compl., ¶ 57(a) - (b). The sales forms

also include a provision notifying the customer of the right to refund for late

delivery in less than 10-point, non-bold font, in violation of Defendants'

responsibilities under N.J.A.C. 13:45A-5.3(a). *Id.* ¶ 57(c).  The sales forms

also include a provision that limits the right to a full refund if a special order

item is cancelled later than three days after it was ordered, without clarifying

that it is not applicable in the event of untimely delivery, contrary to the

Defendant's responsivity under N.J.A.C. 13:45A-5.1(b) to offer a full and

prompt refund if the furniture is not delivered by the promised delivery date

as mandated by the Furniture Delivery Regulations, and thereby also

violating Defendant's responsibility under N.J.A.C. 13:45A-5.3(c) to refrain

from using such language.  *Id.* at ¶ 57(d) and (e). [2]

---

[2] Although the issue was not reached by the District Court, the Defendant below argued primarily that the doctrine of "substantial compliance" precluded its violations of the Furniture Delivery Regulations from resulting in TCCWNA liability, because the delivery date was listed elsewhere in the sales forms, and the required notices were "conspicuous" even if they were not in bold type or 10 point type size as required by the Regulations.   However, under New Jersey law, the

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the decision

of the District Court be reversed and this action remanded.


                                    Respectfully submitted,


Dated: June 15, 2016                 /s/   Henry P. Wolfe
                                     Henry P. Wolfe
                                     The Wolf Law Firm, LLC
                                     Counsel for Appellants

_____

doctrine of substantial compliance cannot serve as a substantive defense to
consumer claims because it is a procedural rule, "designed to avoid technical
rejection of legitimate claims."  *Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141,
1148 (N.J. 2001).   The doctrine applies to excuse late filings and other technical
errors to prevent harsh procedural consequences, typically in favor of plaintiffs.
*Sroczynski v. Milek*, 961 A.2d 704, 719 (N.J. 2008) ("Typically, the doctrine of
substantial compliance has been invoked in favor of plaintiffs seeking relief from a
statute of limitations or similar rule.")  In short, the doctrine of substantial
compliance is simply inapplicable as a defense to a legal claim, and to the
Plaintiff's knowledge, there is no New Jersey precedent applying it as such.

## COMBINED CERTIFICATIONS [these still need to be done/updated]

### Certificate of 3rd Circuit Bar Membership

Pursuant to L.A.R. 46.1(e), I hereby certify that I am a member of the bar of the United States Court of Appeals for the Third Circuit.

Dated: June 15, 2016                    /s/  Henry P. Wolfe
                                        Attorney for Appellants

### Certificate of Compliance with Rule 32(a) Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

 X  this brief contains 6,385 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii)

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

 X  this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman

Dated:  June 15, 2016                   /s/  Henry P. Wolfe
                                        Attorney for Appellants

### Certificate of Virus Check

I certify that on June 15, 2016 I scanned the PDF versions of Brief of Appellants and Appendix Volume I using ESET Endpoint Antivirus, version 6.2.2021.0, with latest definitions version 13652, and found no viruses.

Dated:  June 15, 2016                   /s/  Henry P. Wolfe
                                        Attorney for Appellants

## Certificate of Identical Compliance of Briefs

I certify that the PDF versions of Brief of Appellants and Appendix Volume I being filed via ECF are identical to the hard copies to be delivered to the Court.

Dated:  June 15, 2016                              /s/  Henry P. Wolfe
                                                    Attorney for Appellants

## Certificate of Service

I certify that on June 15, 2016, I electronically filed the Brief of Appellants and Appendix Volume I along with Certification of Service via the Court's 3rd Third Circuit CM/ECF System.  Service of the same was made on this date upon the following counsel via the Court's Third Circuit CM/ECF System:

**LEE DAVID VARTAN**
HOLLAND & KNIGHT
31 WEST 52ND STREET
NEW YORK, NY 10019
Email: lee.vartan@hklaw.com

**SEAN C. SHEELY**
HOLLAND & KNIGHT LLP
31 West 52nd Street
NEW YORK, NY 10019
Email: sean.sheely@hklaw.com

**DUVOL M. THOMPSON**
HOLLAND & KNIGHT LLP
31 WEST 52ND STREET
NEW YORK, NY 10019
Email: duvol.thompson@hklaw.com

as well as all of Appellants' counsel of record.

Dated:  June 15, 2016                              /s/  Henry P. Wolfe
                                                    Attorney for Appellants

# **APPENDIX**

## **INDEX**

### **VOLUME I** (App. 1 – 18)

**Page**

Notice of Appeal .................................................................................App.1

Order of the District Court Granting Defendant's Motion to Dismiss, Issued February 29, 2016 ............................................................................App.2

Oral Opinion of the District Court, February 29, 2016 Transcript ....................App.3

### **VOLUME II** (App. 19 – 46)

**Page**

Docket Entries in District Court ....................................................................App.19

Amended Complaint with Exhibits.................................................................App.27

New Jersey Assembly Commerce, Industry and Professions Committee, Statement to Assembly, No. 1660 (Exhibit A to Plaintiffs' Supplemental Brief in Opposition to Motion to Dismiss) ..................................................................App.45

Certification of Service .................................................................................App.47

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

THE WOLF LAW FIRM, LLC
By: Henry P. Wolfe, NJ Attorney ID No. 031942005
1520 U.S. Highway 130 – Suite 101
North Brunswick, New Jersey 08902
(732)545-7900 – TEL
(732)545-1030 – FAX
*Attorneys for Plaintiffs*

| | |
|---|---|
| CHRISTOPER D. WENGER and EILEEN MULLER, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>BOB'S DISCOUNT FURNITURE, LLC,<br><br>                    Defendant. | CIVIL ACTION NO.:<br>3:14-cv-07707-PGS-LHG |

**NOTICE OF APPEAL**

　　Notice is hereby given that the Plaintiffs, Christopher D. Wenger and Eileen Muller, hereby appeal to the United States Court of Appeals for the Third Circuit from an order granting Defendant's motion to dismiss entered in this action on February 29, 2016.

Dated: March 10, 2016                s/ Henry P. Wolfe_____
                                     Henry P. Wolfe, Esq.
                                     The Wolf Law Firm, LLC
                                     Attorney for Plaintiffs

App. 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CHRISTOPHER D. WENGER and EILEEN
MULLER, on behalf of themselves and those
similarly situated,

        *Plaintiffs*,

v.

BOB'S DISCOUNT FURNITURE, LLC,

        *Defendant*.

Civil Action No: 3:14-cv-07707 (PGS)(LHG)

**ORDER**

RECEIVED

FEB 2 9 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

    This matter having come before the Court on a Motion to Dismiss the Complaint by Defendant Bob's Discount Furniture, LLC [ECF No. 20]; and the Court having considered the submissions of the parties, having heard oral argument, for the reasons set forth on the record, and for good cause shown,

    It is, on this 29th day of February, 2016, hereby

    **ORDERED** that the Motion to Dismiss is **GRANTED**, and this case is dismissed.


PETER G. SHERIDAN, U.S.D.J.

App. 2

```
 1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
 2
   _____
 3 CHRISTOPHER WENGER, et al,
                  PLAINTIFFS
 4
        Vs.                              CIVIL NO.
 5                                       14-7707 (PGS)
   BOB'S DISCOUNT FURNITURE, INC.,
 6                DEFENDANT
 7 _____
   DAVID & KATINA SPADE, et al,
 8                PLAINTIFFS
 9      Vs.                              CIVIL NO.
                                         15-1826 (PGS)
10 SELECT COMFORT CORP., et al,
                  DEFENDANTS
11 _____
12
                         FEBRUARY 29, 2015
13                       CLARKSON S. FISHER COURTHOUSE
                         402 EAST STATE STREET
14                       TRENTON, NEW JERSEY  08608
15
16
   B E F O R E:        THE HONORABLE PETER G. SHERIDAN
17                     U.S. DISTRICT COURT JUDGE
                       DISTRICT OF NEW JERSEY
18
19
20 COURT'S OPINION ON MOTIONS TO DISMISS
21
22
23                     Certified as true and correct as required
                       by Title 28, U.S.C. Section 753
24                     /S/ Francis J. Gable
                       FRANCIS J. GABLE, C.S.R., R.M.R.
25                     OFFICIAL U.S. REPORTER
                       (856) 889-4761
```

*United States District Court*
*Trenton, New Jersey*

1    THE COURT:  So, this matter comes before the Court

2    on two putative class actions, each of which is subject to a

3    Rule 12 motion to dismiss for failure to state a claim.  Both

4    complainants allege a violation of the New Jersey Household

00:01    5    Furniture and Furnishing Regulations, N.J.A.C. (13:45A-5.1),

6    and allege a violation of the Consumer Fraud Act (N.J.S.A.

7    56:8-1).  In addition, both seek a civil penalty ($100 per

8    class member) as provided in the Truth-in-Consumer Contract,

9    Warranty and Notice Act (N.J.S.A. 56:8-1) (TCCWNA).

00:02    10    On November 16, 2015, I heard oral argument in the

11    Spade case and decided the motion at that hearing.  After my

12    decision I had second thoughts, so a conference call with the

13    parties was initiated and the Court requested the plaintiff to

14    file a motion for reconsideration regarding the Court's order

00:03    15    granting judgment on the pleadings (ECF No. 39).  Plus, other

16    issues should be addressed:  (1) whether plaintiffs have

17    Article III standing; (2) whether plaintiffs are "aggrieved"

18    under TCCWNA; and (3) issues regarding attorneys' fees.

19    Thereafter, the Court informally combined the two cases for

00:03    20    purposes of oral argument.  (See, January 20, 2016.) (ECF No.

21    67)(ECF No. 46).

22    Spade v. Select Comfort.

23    On January 12, 2015, plaintiff commenced this civil

24    action complaint in the Superior Court, Ocean County, and the

00:04    25    matter was removed to this Court on March 11, 2015 based on

3

```
 1   diversity.  The only counts remaining against Select Comfort
 2   are Counts 1 and 2.  Count 1 alleges a violation of TCCWNA,
 3   and Count 2 alleges a violation of the Consumer Fraud Act.  By
 4   way of background, Select Comfort designs, and markets and
 5   supports a line of adjustable firmness mattresses, branded as
 6   Sleep Number® Bed, as well as bases and bedding accessories.
 7   The action arising out of plaintiff's purchase of a Sleep
 8   Number® Bed on or about April 25, 2013.  Plaintiff paid Select
 9   Comfort approximately $9,378.48 for the bed's purchase,
10   including an adjustable base, which allows customers to raise
11   and lower the head and foot portions of the mattress with a
12   remote control.
13          On or about May 29, 2013, the plaintiffs took
14   delivery of the bed.  After delivery, plaintiffs experienced
15   two distinct issues:  One, operation of the bed's mattress was
16   poor, including a shifting problem, that Select Comfort
17   attempted to repair twice; and, two, a loud cracking sound
18   emanating from the base, which defendant also attempted to
19   repair.  Plaintiffs also allege that only one side of the bed
20   responded to the remote control.
21          After a series of unsuccessful attempts to repair by
22   Select Comfort and the vendor, plaintiff retained counsel.
23   Plaintiff's lawyer wrote a letter to the defendants in October
24   24, 2014.  The letter indicated plaintiff revoked acceptance
25   and requested that the defendant remove the bed, provide a
```

00:05  (line 5)
00:05  (line 10)
00:06  (line 15)
00:06  (line 20)
00:07  (line 25)

1    refund and pay attorneys fees.  The defendant agreed to pay a

2    full refund in the amount paid for the mattress and bed, but

3    the attorneys fees were not paid.  Despite the settlement,

4    plaintiff sued Select Comfort alleging breach of TCCWNA and

00:07    5    the Consumer Fraud Act by failing to comply with the New

6    Jersey Household Furniture Regulations.

7        Select Comfort counters that it substantially

8    complied with the above Household Furniture Regulations

9    because it timely delivered the bed, it provided a refund for

00:08    10    the defective bed delivered, and plaintiffs cannot demonstrate

11    any loss because the plaintiffs are not aggrieved as the

12    TCCWNA requires because the purchase of the mattress had

13    already been refunded.

14        <u>Wenger v. Bob's.</u>

00:09    15        Plaintiffs placed an order for one tan Westbury love

16    seat, and one petite red chest at Bob's Monmouth Junction

17    store on November 25, 2013.  The furniture was purchased under

18    plaintiff Eileen Muller's name, however, plaintiff Christopher

19    Wenger, Muller's son, paid for the furniture.  At the time of

00:10    20    the sale, plaintiff was given a document containing Bob's

21    policies regarding refunds, cancellation, service and

22    warranties.

23        Within the sales documents received by the Mullers,

24    there is a form that shows the items purchased and the dates

00:47    25    to be delivered.  On that sheet it shows the Westbury tan love

*United States District Court*
*Trenton, New Jersey*

1    seat will be delivered on December 4, 2013, and the petite red

2    chest was taken with them from the store on 11/25/2013.  From

3    reading this document it is very clear when delivery will

4    occur.  However, the format does not match the terms of the

00:48    5    regulation.

6            The plaintiff carried the chest from the store that

7    day, and the love seat was to be delivered.  The total price

8    for both items was $778.94.  Plaintiff received the furniture

9    on time and it was conforming.  Despite the timely delivery of

00:11    10    the love seat, plaintiffs claim that Bob's violated their

11    legal rights as consumers in six ways:

12            (1) The provision of the sale document states "The

13    merchandise that you have ordered is promised for delivery to

14    you on or before _____"; and leaving the blank space empty is

00:12    15    contrary to the mandatory language required by the Furniture

16    Regulations at N.J.A.C. 13:45A-5.2;

17            (2) the provision in the sales document states "The

18    merchandise that you have ordered is promised for delivery to

19    you on or before _____"; and that clause is not in ten-point

00:13    20    bold face as required by the Furniture Delivery Regulations of

21    (N.J.A.C. 13:45A-5.2(a));

22            (3) the provision in the sales document which states

23    "If the merchandise ordered by you is not delivered by the

24    promised delivery date, Bob's Discount Furniture must offer

00:13    25    the choice of (1) cancelling your order with a prompt full

*United States District Court*
*Trenton, New Jersey*

App. 7

1    refund of any payment you have made, or (2) accepting delivery

2    at a specific later date; and that language is not in

3    ten-point bold face type as required by the regulations

4    (N.J.S.A. 13:45A-5.3(a));

00:14    5         (4) The provision in the sales document which

6    provides only for partial refund if a special order item is

7    cancelled later than three days after it was ordered is

8    contrary to the requirement that a full and prompt refund be

9    given if the ordered merchandise is not delivered by the

00:14    10    promised delivery date as mandated by the Furniture

11    Regulations (N.J.A.C. 13:45A-5.1(b));

12         (5) The provision in the sales document which

13    provides the consumers are not entitled to a full refund of a

14    special order which is cancelled later than three days after

00:14    15    it was ordered is contrary to the requirements (N.J.A.C.

16    13:45A-5.1(b)), and therefore violates the Furniture

17    Regulations at N.J.A.C. 13:45A-5.3(c); and

18         (6) The provision in the sales document that

19    requires a consumer to contact a consumer customer care

00:15    20    representative if there is a problem with the delivery of home

21    furniture without notifying that a consumer has the option of

22    obtaining a prompt refund or accepting delivery at a later

23    specified later date if the delivered goods are nonconforming

24    is contrary to the Furniture Delivery Regulations (N.J.A.C.

00:16    25    13:45A-5.1(e)(1)).

1          Although Spade is a motion for judgment on the

2    pleadings, and Wenger is a motion to dismiss for failure to

3    state a claim under FRCP 12(b)(6), the standard is nearly

4    identical.  *Turbe v. Government of Virgin Islands*, 938 F.2d

00:17   5    427, 428 (3d. Cir. 1991).  On a motion to dismiss for failure

6    to state a claim pursuant to Rule 12(b)(6), the Court is

7    required to accept as true all allegations in the complaint,

8    and all reasonable inferences that can be drawn therefrom, and

9    to view them in a light most favorable to the non-moving

01:43   10    party.  That's *Oshiver v. Levin*, 38 F.3d 1380, 1384 (3d. Cir.

11    1994).  To survive a motion to dismiss a complaint must

12    contain sufficient factual matter, accepted as true to "state

13    a claim to relief that is plausible on its face."  That's

14    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also, *Bell*

01:44   15    *Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  In order to

16    survive a motion to dismiss, the complaint must allege facts

17    that give rise to a plausible claim, and raise the right to

18    relief above the speculative level.  That's *Ashcroft*, 556 U.S.

19    662, 664; and *Twombly*, 550 U.S. 544, at 555. The question is

01:44   20    whether the claimant can prove any set of facts consistent

21    with his or her allegations that will entitle him or her to

22    relief, not whether that person will ultimately prevail.

23    That's *Semerenko v. Cendant, Corp.*, 223 F.3d 165, 177 (cert.

24    denied 531 U.S. 1149, 2001).

00:17   25          Analysis.

*United States District Court*
*Trenton, New Jersey*

App. 9

1        The Court will address the claims of both plaintiffs

2    first by addressing the Furniture Delivery Regulations, then

3    working back through the Consumer Fraud Act and TCCWNA.

4              Furniture Delivery Regulations.

00:18    5        The Division of Consumer Affairs within the

6    Department of Law and Public Safety promulgated the Furniture

7    Delivery Regulations sometime prior to 1995.  Evidently "delay

8    or non-delivery of household furniture that has been ordered

9    is one of the most frequent complaints reported to the

00:18   10    Division."  27 N.J.R. 3566(a) (September 18, 1995) (Proposal

11    Number PRN 2000-327).  The purpose of the Furniture Delivery

12    Regulations is to "enable the Division to continue its task

13    force and operation to secure compliance, and to respond to

14    consumer complaints."  *Id.* (Social Impact Section.)  As

00:19   15    promulgated under the Consumer Fraud Act, the Division may

16    also seek sanctions where there are "serious or persistent

17    violators."  *Id.*  The regulations impose contract conditions

18    upon the sellers of furniture.  The regulations require that

19    the seller:

00:19   20        "(1) deliver all of the ordered merchandise by or on

21         the promised delivery date; or provide written notice

22         of the impossibility of meeting the promised date, the

23         notice shall offer the consumer the option to cancel said

24         order with a prompt refund or to accept delivery at a

00:20   25         specified later time, said notice shall be provided prior

*United States District Court*
*Trenton, New Jersey*

1          to the delivery date."  (N.J.A.C. 13:45A-5.1.)

2                  (2) The contract or sales document must show the

3     date of the order and contain the following sentence in bold

4     type:

00:20      5              "The merchandise you have ordered is promised for

6              delivery to you on or before _____, and then in

7              parentheses (insert date or length of time agreed upon),

8              and it shall not be be preprinted.  (N.J.A.C.

9     13:45A-5.2).

00:21     10              (3) The contract or sales document shall

11     conspicuously disclose the seller's obligation in the case of

12     delayed delivery on the first page of the contract form or

13     sales document in bold type:

14              "If the merchandise ordered by you is not delivered

00:21     15              by the promised date (insert name of seller) must offer

16              you the choice of (1) cancelling your order with a prompt

17              full payment of any payment you have made; or (2)

18              accepting delivery at a specified later date."

19                  (4) Any contract or sales document that contains the

00:22     20     term "all sales final" or "no cancellations", or "no refunds",

21     is deemed null and void and unenforceable.  N.J.A.C.

22     13:45A-5.3.

23                  And lastly, (5) any violations are subject to

24     "sanctions contained in the Consumer Fraud Act."

00:23     25              Spade/CFA.

*United States District Court*
*Trenton, New Jersey*

App. 11

1          Plaintiffs contend that although they received their

2     furniture in a timely fashion, the sales contract at issue did

3     not contain the requisite language under the Furniture

4     Regulations, and therefore they have suffered violations of

00:23     5     the CFA.  In order to plead a violation of the CFA, Spade must

6     allege:  (1) unlawful conduct by the defendant (a deceptive

7     practice); (2) an ascertainable loss on the part of the

8     plaintiff; and (3) a causal relation between the defendant's

9     unlawful practice and plaintiff's ascertainable loss.  *Hoffman*

00:24     10     *v. Hampshire Labs,* 405 N.J. Super 105, 113 (App. Div. 2009).

11     Given that the regulation states that the failure to comply

12     with any provision of the Furniture Regulations constitutes a

13     deceptive practice (N.J.A.C. 13:45A-5.1(c)), plaintiff must

14     still show there was an ascertainable loss in order to meet

00:25     15     the standards of a bona fide claim.  An ascertainable loss

16     includes actual money paid, as well as an estimate of damages

17     calculated within a reasonable degree of certainty.  *Berg v.*

18     *Reaction Motors*, 37 N.J. 396, 404 (1962.) Once a plaintiff has

19     proven an ascertainable loss by a defendant's failure to

00:25     20     comply with the CFA, it is entitled to compensation for said

21     loss.  *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, at 22 (1994).

22     If a plaintiff proves that unlawful practice under the CFA and

23     an ascertainable loss has occurred, then an award of treble

24     damages and attorneys fees are mandatory.  N.J.S.A. 56:8-19.

00:26     25          The Court finds that the Spade's complaint fails to

1  allege a cause of action under the CFA for violations of the

2  Furniture Regulations because Spade has not shown any

3  ascertainable loss.  Plaintiff's allegations focus on their

4  dissatisfaction with the product itself and not with delayed

00:26      5  delivery.  Generally, the Furniture Regulations only apply

6  where there is untimely delivery.  *Dinikola v. Watchung*

7  *Furniture*, 232 N.J. Super 69, 72 (App. Div. 1989; cert. denied

8  117 N.J. 126 (1990)).  Therefore, the requirements under the

9  CFA are not implicated by the allegations in the complaint.

00:28     10  Plaintiffs did not suffer any losses due to their untimely

11  delivery, and a defective bed was reclaimed and a refund was

12  issued.  There is no ascertainable loss and there is no

13  delayed delivery issue.

14       The plaintiff indicates that although there was no

00:29     15  ascertainable loss attorneys fees should be included as such.

16  The Court disagrees.  Attorneys fees are reimbursable under

17  the CFA only as a consequence of a proven Consumer Fraud Act

18  violation where there is an ascertainable loss.  Here, there

19  is no such loss or violation, and, as such, attorneys fees are

00:29     20  not awarded.  Moreover, the regulations relied upon by

21  plaintiff state that the seller's obligation is to make a

22  "prompt full payment of any payment you have made."  This was

23  done.  N.J.A.C. 13:45A-5.3

24       Wenger/CFA.

00:29     25       With regard to the CFA, the rationale is similar to

*United States District Court*
*Trenton, New Jersey*

App. 13

1  Spade.  The plaintiff concedes that he has no loss and the

2  furniture was timely delivered.  Moreover, the delivery dates

3  were provided within the sales document, but the bold type was

4  not used and the dates were not placed on the first page as

00:30      5  required by the regulations.  Absent any ascertainable loss, a

6  CFA claim has not been shown.  In both cases, the sellers

7  complied with the spirit of the regulations to deliver

8  furniture timely, and it is unfair to punish such conduct over

9  use of form language.

00:30     10          TCCWNA.

11          A pivotal issue is whether plaintiffs can assert the

12  claim under TCCWNA without any ascertainable loss.  The law in

13  this Circuit has been split on the matter.  In the District of

14  New Jersey, a 2015 case stated that:  "An action pursuant to

00:30     15  TCCWNA that relies on an alleged violation of the Consumer

16  Fraud Act must also meet the requirements of a CFA claim,

17  including the requirement that plaintiff suffered an

18  ascertainable loss."  *Wilson v. Kia*, 2015 WL 9903540 at *3-5

19  (D.N.J. June 25, 2015).  Two more recent cases in this

00:31     20  District that stand for the same proposition are *Mladenov v.*

21  *Wegmans*, 2015 WL 5023484 at *15-16 (D.N.J. August 26, 2015)

22  and *Mattson v. Aetna Life Company*, 2015 WL 5090528 at *9-10

23  (D.N.J. August 31, 2015).  In *Mattson*, the court stated that:

24  A TCCWNA claim grounded in a CFA violation cannot proceed

00:32     25  unless the CFA claim cause of action is stated, and plaintiffs

1    could not sustain their CFA claim partly because their alleged

2    damages were "illusory".

3         Plaintiff responds that these cases are in conflict

4    with other prior authority; such as *McGarvey v. Pensky*, 639

00:33  5    F.Supp.2d 450, 457 (D.N.J. 2009) (reconsideration granted at

6    2010 WL 1379967) (rev'd on other grounds at 486 Fed. Appx.

7    276, 279 (3d. Cir. 2012)); see also, *Arcand v. Brothers*, 2010

8    WL 390733 (D.N.J. 2010, *13).  In those cases, plaintiff

9    claims the TCCWNA "provides a remedy even if the plaintiff has

00:34  10   not suffered any actual damages." *Id.*  The Court disagrees

11   with the *Arcand* and the *McGarvey* cases, based on a different

12   statutory interpretation.  The Court looks at the TCCWNA

13   statute.  Within the TCCWNA statute there is a section

14   entitled "Violations; civil liability to aggrieved consumer:

00:36  15   Action termination of contract."  That section states:

16        "Any person who violates the provisions of this Act

17        shall be liable to the aggrieved consumer for civil

18        penalty of not less than $100 or actual damages or both

19        at the election of the consumer together with reasonable

00:36  20        attorneys fees and costs.  This may be recoverable by a

21        consumer in a civil action in a court of competent

22        jurisdiction or as part of a counterclaim by the consumer

23        against the seller, lessor, creditor, lender, bailee or

24        assigner any of the aforesaid, who aggrieved him;

00:37  25        consumer shall have the right to petition the court to

1          terminate a contract which violates the provision of

2          Section 2 of this Act, and the court in its discretion

3          may void the contract." (N.J.S.A. 56:12-17.)

4          Since the statute requires that the party must be

00:38     5     "aggrieved" to create a TCCWNA cause of action, the use of the

6     word "aggrieved" must be determined.  Plaintiffs argue

7     differently.  They state that this disjunctive language

8     suggests that the legislature intended there be a penalty even

9     if the plaintiff did not suffer any actual damage.

00:39     10          I look at it differently.  So, the Court must

11     determine the definition of aggrieved consumer through the

12     usual rules of statutory construction.  As the Third Circuit

13     notes:  "In deciding questions of statutory interpretation, we

14     begin with the text of the statute itself."  *Watkins v.*

00:40     15     *DineEquity*, 591 Fed. App'x 132, 135 (3d Cir. 2014).  And

16     Circuit Judge Vanaskie reasoned in that case, "New Jersey

17     courts 'subscribe to the statutory words their ordinary

18     meaning and significance and read them in context with related

19     provisions, so as to give sense to the legislation as a

00:40     20     whole.'"  *Id., (*quoting *DiProspero v. Penn*, 183 N.J. 477 (N.J.

21     2005)).  In adopting Judge Vanaskie's rationale, this Court

22     looked to the ordinary definition of an aggrieved party.

23     Aggrieved party is "one entitled to a remedy, especially a

24     party whose personal pecuniary or property rights have been

00:41     25     adversely affected by another person's action."  See, Blacks

1  Law Dictionary.  Use of that definition is consistent with at

2  least one New Jersey case, wherein the court determined that

3  the word aggrieved party "refers to one suffering from the

4  effect of a violation of the act."  See, *Cameron v. Monkey*

00:42   5  *Joe's Big Nut Co.*, 2008 WL 6084192 at *5 (N.J. Super. Ct.

6  2008).

7           In these cases, Wenger and Spade, both defendants

8  provided delivery dates and timely delivered the merchandise,

9  and in Spade the plaintiff received a refund for the defective

00:43   10  furniture.  All of the actions of the defendants are in

11  accordance with the spirit of the Household Furniture

12  Regulations, but may not have met the written requirements

13  appropriately.  However, if you look at common sense and the

14  purpose behind the rule, it is to foster timely delivery of

00:44   15  conforming furniture, which was done in both cases.  As such,

16  the Court does not see, when interpreting the statute, that

17  either plaintiff was an aggrieved consumer.

18           Plaintiffs dispute same.  They allege that there's

19  one brief statement in the legislative history indicating that

00:44   20  a seller may be responsible even if the consumer was not

21  injured (see, Statement to Assembly Commerce Committee).  To

22  utilize such a statement for legislative history undermines

23  the plain meaning rule of statutory construction which the

24  courts utilize.  Where the language of the statute is clear,

00:45   25  there is no need to look outside of the statute to its

*United States District Court*
*Trenton. New Jersev*

1  legislative history in order to determine the statute's

2  meaning.  See, Kim, Yule. *Statutory Interpretation: General*

3  *Principles and Recent Trends*, Washington, D.C., dated August

4  31, 2008, available at UNT Digital Library,

00:45  5  http://digital.library.unt.edu/ark:/67531/metadc26119/.  Last

6  visited Feb. 2, 2016.

7          Here, "aggrieved consumer" is one who is suffering

8  the effects of a violation.  That interpretation is not

9  ambiguous, and therefore the language of the statute should

00:46  10  apply.  Since neither plaintiff is an aggrieved consumer, the

11  TCCWNA counts are dismissed.  An appropriate order shall be

12  entered.

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Trenton, New Jersey*

App. 18